United States District Court
District of Massachusetts

|  |  |
|---|---|
| NARINE RAMHIT,<br><br>          Plaintiff,<br><br>          v.<br><br>DAVID LUU, CITY OF BROCKTON, ALI<br>JAAFAR AND THE COMMONWEALTH OF<br>MASSACHUSETTS,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)   24-12420-NMG<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM & ORDER

GORTON, J.

This suit arises out of allegations of the use of excessive force during a traffic stop. Narine Ramhit ("plaintiff" or "Ramhit") claims that Brockton Police Officer David Luu ("Luu") and Massachusetts State Trooper Ali Jaafar ("Jaafar") shoved him to the ground and charged him for traffic violations without probable cause. Luu and the City of Brockton move to dismiss the action. For the following reasons, the motion will be allowed, in part, and denied, in part.

I. Background

According to the amended complaint, in October, 2022, Brockton Police Officer David Luu ("Luu") conducted a traffic stop of a vehicle operated by Ramhit. Luu allowed him to drive away but a short time later, Luu, accompanied by state trooper

Jaafar, stopped Ramhit's vehicle a second time.  Luu and Jaafar
asked Ramhit to unlock his door.  When Ramhit did so, Luu and
Jaafar allegedly opened the driver's side door, grabbed Ramhit's
left arm and shoved him onto the street.  As a result, Ramhit
purportedly suffered a dislocated shoulder, torn rotator cuff
and severe emotional distress.

Luu then charged plaintiff with a civil violation and four
misdemeanors.[1]  Plaintiff claims that Luu filed a criminal
complaint against him without probable cause.  In August, 2023,
plaintiff was found not responsible for the civil violation and
the four misdemeanors were dismissed.

Plaintiff maintains that Luu has a history of violating the
civil rights of suspects.  In 2015, Luu and other Brockton
officers were sued in state court in connection with the arrest
of a citizen.  The charges were later dismissed.

In September, 2024, plaintiff filed suit in this Court and
amended his complaint five months later.  The amended complaint
asserts 15 claims:

> I)    excessive force under 42 U.S.C. § 1983 against Luu and
>       Jaafar;

---

[1] Although defendant defines the charges filed against plaintiff, plaintiff
does not do so in his complaint and, as such, the Court may not consider the
nature of the charges in assessing the motion to dismiss. See Ashley v. N.Y.
State Off. of Child. and Fam. Servs., 33 F. Supp. 3d 76, 80 (D. Mass. 2014)
("Generally, [] the court may only consider at the motion to dismiss stage
the facts alleged in the complaint, and not additional assertions alleged in
a response.").

II) excessive force under M.G.L. c. 12 § 11I against Luu and Jaafar;

III) Fourth Amendment violation under 42 U.S.C. § 1983 against Luu and Jaafar;

IV) Article XIV violation under M.G.L. c. 12 § 11I against Luu and Jaafar;

V) assault and battery against Luu and Jaafar;

VI) intentional or reckless infliction of emotional distress against Luu and Jaafar;

VII) common law malicious prosecution against Luu;

VIII) malicious prosecution under 42 U.S.C. § 1983 against Luu;

IX) malicious prosecution under M.G.L. c. 12 § 11I against Luu;

X) common law abuse of process against Luu;

XI) abuse of process under 42 U.S.C. § 1983 against Luu;

XII) abuse of process under M.G.L. c. 12 § 11I against Luu;

XIII) Monell claim against the City of Brockton and for an official policy or custom;

XIV) Monell claim against the City of Brockton for failure to train or supervise; and

XV) Failure to train or supervise against the City of Brockton under M.G.L. c. 258, § 2.

Defendants Luu and the City of Brockton now move to dismiss all claims.

## II. Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the subject pleading must state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the "court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). The reviewing court "may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if "actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 556). Rather, the necessary "inquiry focuses on the

reasonableness of the inference of liability that the plaintiff

is asking the court to draw." Id. at 13.   The assessment is

holistic:

> [T]he complaint should be read as a whole, not parsed piece
> by piece to determine whether each allegation, in
> isolation, is plausible.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013)

(quoting Ocasio-Hernandez, 640 F.3d at 14).

## III. Analysis

### a. Counts I-VII and XIII: Group Pleading

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a

"short and plain statement of the claim showing that the pleader

is entitled to relief."   A district court may dismiss a

complaint that does not comply that requirement. Vakalis v.

Shawmut Corp., 925 F.2d 34, 36 (1st Cir. 1991).

> In order to satisfy the minimal requirements of notice
> pleading, a plaintiff cannot "lump" multiple defendants
> together and must "state clearly which defendant or
> defendants committed each of the alleged wrongful acts."

Canales v. Gatzunis, 979 F. Supp. 2d 164, 170 (D. Mass. 2013)

(quoting Bagheri v. Galligan, 160 F. App'x 4, 5 (1st Cir.

2005)).

Defendants assert that Counts I through VII should be

dismissed because the allegations against Luu and Trooper Jaafar

are "lumped together" without distinction, therefore failing to

satisfy Rule 8's pleading requirements.   Defendants further

assert that Count XIII should be dismissed because plaintiff fails to describe which municipal defendant adopted the policy, custom or practice alleged in his Monell claim.

The Court is not persuaded. The complaint makes clear which actions were allegedly taken by Officer Luu and which by Trooper Jaafar. For example, plaintiff alleges that Officer Luu pulled his cruiser behind plaintiff's car and activated his emergency lights, while Trooper Jaafar maneuvered his cruiser in front of plaintiff. The complaint describes the actions of Luu and Jaafar in combination when discussing the physical confrontation (Dkt. No. 7, ¶¶ 36-38) but that is not deficient pleading because it is entirely plausible for two individuals to engage in the same conduct at the same time. See United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1184 (9th Cir. 2016) ("There is no flaw in a pleading . . . where collective allegations are used to describe the acts of multiple defendants who are alleged to have engaged in precisely the same conduct.").

A plaintiff who alleges that "Defendant A and Defendant B went outside and threw the football," has not engaged in improper group pleading. Here, the complaint alleges that two officers, acting together, opened a vehicle door, grabbed the driver and threw him onto the ground. Where such coordinated conduct by the named defendants is entirely plausible, dismissal

-6-

of the claims is unwarranted. See Zond, Inc. v. Fujitsu Semiconductor Ltd., 990 F. Supp. 2d 50, 53 (D. Mass. 2014) (holding that group pleadings are not, prima facie, excluded by Rule 8(a) and, at the motion to dismiss stage, a complaint generally will be dismissed only when it is "entirely implausible or impossible for the grouped defendants to have acted as alleged"). The complaint, as written, provides enough detail to "give [] defendant[s] fair notice of the claim and the grounds upon which it rests." Ocasio-Hernandez, 640 F.3d at 12 (citing Twombley, 550 U.S. at 555).

The allegations underlying Count XIII satisfy the Rule 8 pleading standard for the same reasons. The complaint alleges that both the City of Brockton and the Commonwealth had official policies or customs that ignored the misconduct of their respective employees. It adequately describes the prior misconduct of Jaafar and Luu and alleges that their respective employers took no action in response that misconduct. Defendants have been made sufficiently aware of the allegations against them.

**b. Counts I through XII: Qualified Immunity**

The complaint brings 12 separate claims against Luu in his individual capacity.[2]  Those claims are as outlined in the Background section <u>supra</u>.

As an affirmative defense, the City asserts that Luu is entitled to qualified immunity against all claims.  Common law immunity is distinct from qualified immunity under federal law, <u>Nasir</u> v. <u>Town of Foxborough</u>, No. 19-cv-11196-DJC, 2020 WL 1027780, at *8 (D. Mass. Mar. 3, 2020), but qualified immunity under the MCRA and §1983 are coextensive, <u>Miller</u> v. <u>Puliese</u>, 693 F. Supp. 3d 163, 180 (D. Mass. 2023).  The Court will analyze the claims under §1983 and the MCRA together before turning to Ramhit's common law claims.

**1. Counts I, II, III, IV, VIII, IX, XI and XII:
Federal and State Constitutional Claims**

Public officials are afforded qualified immunity from personal liability "arising out of actions taken in the exercise of discretionary functions." <u>Glik</u> v. <u>Cunniffe</u>, 655 F.3d 78, 81 (1st Cir. 2011) (citing <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800, 807 (1982)).  Officials are immunized unless their conduct violates

---

[2] The complaint does not specify whether plaintiff brings claims against the officers in their official or personal capacities but the Court presumes the latter because plaintiff seeks punitive damages, which can only be recovered against officials in their individual capacities, <u>City of Newport</u> v. <u>Fact Concerts, Inc.</u>, 453 U.S. 247, 259-60 (1981), and, furthermore, the City asserts a defense of qualified immunity on behalf of Luu, indicating that it interprets the complaint as asserting claims against him in his individual capacity, <u>Powell</u> v. <u>Alexander</u>, 391 F.3d 1, 23 (1st Cir. 2004).

"clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 580 U.S. 73, 78-79 (2017).  The question of the applicability of qualified immunity is analyzed in two parts:

> (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation.

Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).

The City maintains that none of the claims against Luu alleges a violation of a constitutional right, let alone one that is "clearly established."

As a preliminary matter, Ramhit explicitly brings some of his claims as both "common law" violations and constitutional violations under §1983 or M.G.L. c. 12, § 11I.  Qualified immunity plainly protects Luu from claims that do not arise from constitutional violations and, as such, Ramhit's claims for "common law" malicious prosecution (Count VII) and abuse of process (Count X) are deficient.

With respect to the "excessive force" claims, Ramhit alleges injuries that arose out of a traffic stop and arrest. His claims should therefore be analyzed as potential violations of his Fourth Amendment rights. Graham v. Connor, 480 U.S. 386, 394 (1989).  To plead a violation of one's Fourth Amendment rights through the use of excessive force, a plaintiff must

allege that "the defendant employed force that was unreasonable under all circumstances." Correia v. Feeney, 620 F.3d 9, 12 (1st Cir. 2010). Courts must consider a number of factors to assess the reasonableness of an officer's use of force, including

> (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.

Correia v. Town of Westport, No. 16-cv-12408-ADB, 2017 WL 3940931, at *3 (D. Mass. Sept. 7, 2017) (citing Graham, 490 U.S. at 387, 396). Here, there are serious allegations of an unreasonable use of force. According to the complaint, Ramhit had committed no crime, posed no immediate threat to anyone and had made no attempt to flee or evade arrest. If that is proven, Luu is not entitled to qualified immunity on those counts.

As to Counts III and IV, defendants argue that Ramhit does not specify any conduct that constitutes a distinct Fourth Amendment violation or Article XIV violation. In response, plaintiff insists that it is well established that police officers violate the Fourth Amendment of the Constitution and Article XIV of the Massachusetts Declaration of Rights when they arrest individuals without probable cause. See Alfano v. Lynch, 847 F.3d 71 (1st Cir. 2017) (with respect to the Fourth Amendment); Commonwealth v. Privette, 204 N.E.3d 967, 974 (Mass. 2023) (with respect to art. 14). Although it was poorly pled,

the Court will presume that Counts III and IV assert those
violations on the basis of the facts alleged above.

Both the Fourth Amendment and Article XIV of the
Massachusetts Declaration of Rights require police to have
probable cause when making an arrest. Santiago v. Fenton, 891
F.2d 373, 383 (1st Cir. 1989); Commonwealth v. Santaliz, 596
N.E.2d 337, 339 (Mass. 1992). "The standard for probable cause
under [art. 14] mirrors that of the Fourth Amendment." Nuon v.
City of Lowell, 768 F. Supp. 2d 323, 339 (D. Mass. 2011)
(cleaned up).

The facts, as alleged by Ramhit, indicate that "no
reasonably competent officer would have found probable cause" to
arrest Ramhit. Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 7 (1st
Cir. 1997). During the first stop, Ramhit "immediately and
safely" pulled his car over to the side of the road in response
to Luu's emergency lights and siren. He responded in the same
way when he was stopped the second time. He complied when Luu
and Jaafar asked him to roll down his window and unlock his door
before he was arrested by force.

With respect to plaintiff's claims of malicious prosecution
(Counts VIII and IX) and abuse of process (Counts XI and XII),
however, plaintiff does not carry his burden of identifying what
federal or state constitutional right(s) Luu violated. Nieves v.
McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citing Albright v.

-11-

Oliver, 510 U.S. 266, 271 (1994)); W.R.S. v. R.S., No. 17-P-88,

2018 WL 1612261, at *3 (Mass. App. Ct. Apr. 4, 2018).  The Court

will therefore dismiss those claims.

### 2. Counts V, VI, VII and X: Common Law Claims

Plaintiff brings common-law claims of assault and battery

(Count V), intentional or reckless infliction of emotional

distress (Count VI), malicious prosecution (Count VII) and abuse

of process (Count X).  In Massachusetts, public officials are

entitled to common law immunity when acting in their discretion

to make an official decision so long as they do so "act[ing] in

good faith, without malice, and without corruption. Najas

Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 145-46 (1st

Cir. 2016).

Plaintiff has a heavier burden to overcome common law

immunity in Massachusetts than in the federal law context.

Nasir, 2020 WL 1027780, at *9.  When evaluating common law

claims, the court must make

> every presumption in favor of the honesty and sufficiency
> of the motives actuating public officers in actions
> ostensibly taken for the general welfare.

S. Boston Bettermen Trust Corp. v. Boston Redev. Auth., 777

N.E.2d 812, 820 (Mass. 2002).

The Court nevertheless finds that the complaint alleges

facts sufficient to satisfy that heightened standard.  To

establish that defendant acted with "malice," plaintiff must

-12-

show "a wrongful act, done intentionally, without just cause or excuse." Brothers v. Town of Millbury, No. 14-cv-10122-TSH, 2014 WL 4102436, at *11 (D. Mass. Aug. 14, 2014). Here, accepting as accurate all allegations in the complaint which the Court must do in considering a motion to dismiss, Luu is accused of acting with malice by violently throwing Ramhit to the ground despite his full cooperation and by charging Ramhit with multiple misdemeanors without probable cause.

### c. Counts V, VI, VII and X: Common Law Claims

Given that Luu is not immunized from the asserted common law claims, the Court must now determine whether Ramhit has alleged facts sufficient to support each claim.

With respect to assault and battery (Count V),

> Massachusetts law allows for assault and battery claims
> against police officers who use excessive force in
> conducting an arrest.

Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010). For the reasons discussed above, Ramhit alleges sufficient facts to establish that Luu used excessive force when arresting him. See id. (holding that when "a plaintiff alleges both a §1983 excessive force claim and common law claims for assault and battery, [the] determination of reasonable use of force under §1983 controls [the] determination of reasonableness . . . under the common law . . . claims").

-13-

With respect to intentional infliction of emotional
distress (Count VI), a plaintiff must allege

> (1) that [the defendant] intended, knew, or should have
> known that his conduct would cause emotional distress; (2)
> that the conduct was extreme and outrageous; (3) that the
> conduct caused emotional distress; and (4) that the
> emotional distress was severe.

Galvin v. U.S. Bank, N.A., 852 F.3d 146, 161 (1st Cir. 2017)

(quoting Polay v. McMahon, 10 N.E.2d 1122, 1128 (Mass. 2014)).

The bar is high for a plaintiff to establish that conduct is

"extreme and outrageous." Id.  Plaintiff must show that

"defendant's conduct [was] beyond all bounds of decency and

. . . utterly intolerable in a civilized society." Howcroft v.

City of Peabody, 747 N.E.2d 729, 747 (Mass. App. Ct. 2001).

Defendant asserts that plaintiff makes no allegations that Luu's

conduct was extreme and outrageous and, therefore, the claim

must be dismissed.  Ramhit does not respond to defendants'

argument.  As such, Count VI will be dismissed.

With respect to malicious prosecution (Count VII), Ramhit

must allege

> (1) the commencement or continuation of a criminal
> proceeding against the eventual plaintiff at the behest of
> the eventual defendant[]; (2) the termination of the
> proceeding in favor of the accused; (3) an absence of
> probable cause for the charges; and (4) actual malice.

Nieves, 241 F.3d at 53.  Here, plaintiff successfully alleges

the first two elements, i.e., that Luu charged him with a civil

violation and four misdemeanors, all of which were dismissed.

-14-

Plaintiff's claim falters, however, on the question of probable cause. Whether plaintiff has demonstrated a lack of probable cause to arrest is immaterial because that analysis is distinct from what is necessary to determine probable cause to <u>prosecute</u>. <u>Goddard</u> v. <u>Kelley</u>, 629 F. Supp. 2d 115, 130 (D. Mass. 2009). The charges plaintiff faces may ultimately be entirely different than the offense(s) for which he was arrested. <u>Id.</u> Here, plaintiff does not identify the specific charges lodged by Luu and, as such, the Court cannot evaluate their validity. Count VII will therefore be dismissed.

With respect to abuse of process, a plaintiff must allege that "process was used, for an ulterior or illegitimate purpose, resulting in damage." <u>Millennium Equity Holdings, LLC</u> v. <u>Mahlowitz</u>, 925 N.E.2d 513, 522 (Mass. 2010). A claim of abuse of process based on meritless criminal charges requires more than one for malicious prosecution. <u>Lund</u> v. <u>Henderson</u>, 22 F. Supp. 3d 94, 108 (D. Mass. 2014). To establish an ulterior purpose, Ramhit must allege that Luu did not just have the intent to harm him but rather "to gain some other end indirectly." <u>Id.</u> Plaintiff does not allege any such illicit motive attributable to Luu. As such, the Court will dismiss Count X.

-15-

### d. <u>Counts XIII and XIV: Monell Claims against the City</u>

The City next assert that plaintiff does not properly plead all of the elements necessary to raise §1983 claim against it.

The requirements for bringing a §1983 claim against a municipality are articulated by the United States Supreme Court in <u>Monell</u> v. <u>Department of Social Services of City of New York</u>, 436 U.S. 658 (1978), in which the Court held that

> a municipality cannot be held solely liable because it employs a tortfeasor [and thus] cannot be held liable under §1983 on a respondeat superior theory [for the actions of its agents, employees, officers, or the like].

<u>Id.</u> at 691.

A municipality can, however, be held liable if an "official policy" or practice of the municipality "cause[d] an employee to violate another's constitutional rights." <u>Id.</u> (internal quotations omitted). That limitation on municipal liability under §1983, as recognized by the Supreme Court in <u>Monell</u>, stemmed from "concern[ ] that municipal liability based on fault by the City [would] collapse into de facto respondeat superior." <u>Young</u> v. <u>City of Providence ex rel. Napolitano</u>, 404 F.3d 4, 26 (1st Cir. 2005).

To successfully impose <u>Monell</u> liability on a municipality for its policies and practices, a plaintiff must first show that the alleged deprivation of constitutional rights occurred because of the municipality's "policy or custom." <u>DiRico</u> v. <u>City</u>

-16-

of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005); Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Monell, 436 U.S. at 694).  That, in effect, requires proof of a causative link between the policy or practice of the municipality and the harm the plaintiff alleges. See Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (collecting cases requiring causative link).  The plaintiff must also demonstrate that

> municipal decisionmakers knew or should have known [that the policy was inadequate but] nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies.

Echavarria v. Roach, 565 F. Supp. 3d 51, 91 (D. Mass. 2021) (quoting Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019)).

Defendants assert that plaintiff failed properly to plead each element of his Monell claims.

The Court agrees that plaintiff has not successfully asserted a Monell claim with respect Count XIII.  His claim, as asserted, erroneously collapses both the "policy or custom" and the "deliberate indifference" elements of a Monell claim.  The policy at issue cannot be a general "deliberate indifference," but rather must be one of "failing to investigate, discipline, supervise, or train" the offending municipality's officers, DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005), which, in turn, reflects an attitude of deliberate indifference to the unlawful consequences of their action.

Even for Count XIV, in which plaintiff specifies that he is bringing a §1983 claim based on a "failure to train," the complaint includes no actual allegation that, either before or after Luu's conduct, his training was inadequate.

The complaint details a single instance in 2015 in which Luu was accused of violating the civil rights of another person. Ramhit alleges that the City Solicitor who represented Luu and "all members of the Brockton City Government were aware of [his] penchant for violating the civil rights of . . . citizens." The complaint does not, however, include allegations that, either before or after the 2015 incident, the City neglected to train or supervise Luu, let alone any other member of the Brockton Police Department. Nor does the complaint specify in what areas of law enforcement the City should have further trained Luu. Compare Bochart v. City of Lowell, 989 F. Supp. 2d 151, 154-55 (D. Mass. 2013) (denying a motion to dismiss where the complaint alleged that the city failed to train officers in "the proper methods for the use of pepper spray" and "the provision of medical care to detainees").

Moreover, to demonstrate a municipality's "deliberate indifference," there must typically be a "pattern of similar constitutional violations." Connick v. Thompson, 563 U.S. 51, 62 (2011). Thus,

-18-

isolated instances of unconstitutional activity [are
generally] insufficient to establish . . . deliberate
indifference.

Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st

Cir. 1994).  The complaint makes no claim that the City was

indifferent to the misconduct of any officer other than Luu.

As such, both Counts XIII and XIV will be dismissed.

e. **Count XV: Massachusetts Tort Claims Act**

The Massachusetts Tort Claims Act ("the MCTA") requires a

plaintiff who brings a claim against a public employer to

present his claim in writing to the executive officer of the

public employer within two years of the date upon which the

cause of action arose. M.G.L. c. 258, § 4.  Notice must go to

the proper individual at the public employer and constructive

notice is not sufficient to meet the presentment requirement.

See Bellanti v. Boston Pub. Health Comm'n, 874 N.E.2d 439 (Mass.

2007).  The presentment requirement is a statutory condition

precedent to recovery under the MTCA and failure to comply with

the requirement prior to instituting suit is grounds for summary

judgment. Alex v. Boston Water & Sewer Comm'n, 698 N.E.2d 404

(Mass. App. Ct. 1998).

Defendants assert that Count XV sounds in tort and must

adhere to the two-year notice requirement, with which plaintiff

failed to comply.  Plaintiff does not address that argument in

his memorandum in opposition and the Court assumes, therefore,

-19-

that plaintiff does not dispute the assertion.  As such, the
Court will dismiss Count XV.


### ORDER

For the reasons set forth above, the motion to dismiss of
the City of Brockton and Luu (Docket No. 8) is

- with respect to Counts I, II and V, **DENIED**; but

- with respect to all other counts, **ALLOWED**.


**So ordered.**

_____
Nathaniel M. Gorton
Senior United States District Judge

Dated: September 9, 2025